HENRY POWLES ET AL. 
⎱
⎰ MARCH TERM, 1849.
vs.
JOSEPH DILLEY ET AL.

[UNDUE PREFERENCE—INSOLVENT SYSTEM—JURISDICTION.]

To render an assignment valid under the 13th of Elizabeth, it is not enough to show that it was made for a valuable consideration, for that alone is not sufficient; it must also be *bona fide.*

It is well established that by the common law, a debtor may secure one creditor to the exclusion of others, either by payment, or a *bona fide* transfer of his property.

The transfer to a favored creditor, to be void under our insolvent system, must be made with a view, or under an expectation, of taking the benefit of the insolvent laws, and also with intent thereby to give him an undue and improper preference—both intents must be found to exist, or the transfer will not be disturbed.

The intent may be deduced as in other cases from facts and circumstances, but these must be such, as by fair inference will bring the mind to the conclusion that the unlawful intent existed.

The circumstances of this case distinguished from those of *Dulaney* vs. *Hoffman*, 7 *Gill and Johns.*, 107.

The title to property or claims transferred, or conveyed to a favored creditor, contrary to the provisions of the insolvent system, is, by the act of 1812, ch. 77, expressly vested in the trustee of the insolvent, and he alone is competent to sue for its recovery for the benefit of the creditors generally.

The Chancery Court has no jurisdiction over the subject of the appointment of insolvent trustees; this is a power confided exclusively in the courts of law, over which, in the exercise of this authority, this court can exercise no power of revision or control.

Under some circumstances this court may exercise an ancillary jurisdiction, and interpose its authority for the prevention of injury, until the proper court can inquire into the subject and apply the appropriate remedy.

But after the courts of law have acted by the appointment of a trustee, the Chancery Court cannot, upon allegations that they have appointed an improper person, or taken insufficient security, set aside such appointment, and take upon itself the administration of the estate of the insolvent, by an officer of its own.

[The history of the various proceedings in this case, as well as the facts upon which the decree is founded, are so clearly set forth in the opinion of the Chancellor, as to require no further statement.]

THE CHANCELLOR:

The controversy in this case, relates to a policy of insurance of the Merchants Fire Insurance Company for three thousand dollars, dated in February, 1845, given by way of renewal to the defendant, Benjamin R. Edwards, but originally to the said Edwards, and his partner in trade, Barney Dilley, in 1844, upon a stock of goods owned by them in the town of Cumberland, in Alleghany County.

A fire occurred in March, 1845, which destroyed goods, covered by the insurance, to an amount exceeding the policy, and as appears by the proceedings, consumed nearly all the merchandise, constituting the stock upon which Edwards, then the only party interested in the business, was trading.

Certain of the creditors of Edwards and Dilley, residing in the city of Baltimore, upon the allegation of their insolvency and of their purpose to secure a debt due by them to the father of one and the father-in-law of the other, at the expense of the rest of their creditors by an assignment of said policy, filed a bill in the equity side of Baltimore County Court, on the 15th of April, 1845, praying and obtaining from that court, an injunction to prevent such assignment, or the giving any other preference to this favored creditor, and also prohibiting the Insurance Company from paying the policy. The bill also prayed for the appointment of a receiver, to take possession of the effects of the firm for the benefit of creditors generally, and for the purpose of making a rateable distribution of such effects among them. The bill likewise alleged, that by the assignment proposed to be made to the creditor in question, the means of the firm would be so far exhausted, that when judgments should be obtained against the partners, they would have no alternative but to apply for the benefit of the insolvent laws.

The defendants to this bill were the partners, Edwards and Dilley, and the Fire Insurance Company, and upon the coming in of the answers, and upon the transfer of the proceedings to this court, the injunction was dissolved. The order dissolving the injunction was affirmed on appeal, and afterwards and without further proceedings the bill was dismissed by the complainants.

Afterwards, to wit, on the 14th of February, 1846, the same parties filed a second bill in the same court against the same defendants, and Joseph Dilley; in which the same allegations in substance are reiterated, and others made, impeaching the *bona fides*, of the assignment to Joseph Dilley, which they alleged to be then actually made, and praying that the Insurance Company may be restrained by injunction, from paying to either of the defendants, the money due upon the policy ; that Joseph Dilley might be required to account for all property and debts assigned to him by Edwards and Dilley, and for the appointment of a receiver, to take possession of the property and securities so assigned, for rateable distribution among their creditors, without any priority, or preference to any one.

Upon this bill, an injunction was also granted ; and the proceedings being likewise transferred to this court, the injunction after answers filed, was dissolved by an order of the Chancellor, passed on the 11th of November, 1846. An appeal was prosecuted from this order, and at the June term of the Court of Appeals, 1847, it was affirmed.

Afterwards, in December, 1847, the complainants filed their supplemental bill in this court, in which they alleged, that they had obtained judgments upon their claims against Edwards and Dilley. Against Edwards, (Dilley having defended himself upon the plea of minority,) and that, upon the return of *non est* on executions in Alleghany county, they had caused executions to be issued to Kent county, to which the defendant had removed, whereupon he returned to Alleghany county, and there applied for and obtained the benefit of the insolvent laws, and by fraudulent collusion with Joseph Dilley, the latter was appointed his trustee. And this supplemental bill besides impeaching the proceedings of Edwards, in obtaining the benefit of the insolvent laws, and charging a fraudulent combination between him and Joseph Dilley, in having the latter appointed his trustee, likewise charges, "that the transfer by Edwards to the said Joseph Dilly, of the policy of insurance, and any and all transfers made by said Edwards to said Dilley, were made by said Edwards with a view and under an expec-

12

tation of being and becoming an insolvent debtor, and with intent thereby to give to said Dilley an undue and improper preference; and for the purpose of hindering and defrauding the complainants and other creditors of said Edwards and Dilley of their just and lawful actions," &c.

This bill, then, prays that Dilley may be removed from the office of trustee, and that a receiver be appointed to take possession of the proceeds of the policy of insurance and other property, and that the transfers to Dilley may be declared void.

The answers deny the allegations of fraud, and that of Edwards expressly denies, that at the time he made the assignment of the policy to Joseph Dilley, he had it in contemplation to take the benefit of the insolvent laws. The ground taken in the answer is, that the policy was assigned to Dilley at his urgent request, with no view whatever of becoming an applicant for the benefit of the insolvent laws, or of giving an undue and improper preference to Dilley. The answers also set out an original agreement to secure Dilley, who had become the surety of the firm in the purchase of their original stock of goods, and that the transfer of the policy was made in fulfilment of that agreement; and that of Edwards says, he not only made the assignment, because he believed it right and honest to do so, but because he then believed he could continue his business and meet his other engagements.

The proceedings show that the store of Edwards and Dilley was destroyed by fire, in March, 1845, and that their entire stock of goods was consumed, except about five hundred dollars worth; and it appears that this loss and the loss of one of their books of accounts, had rendered Edwards insolvent; Dilley, the other partner, having retired, and having, as already mentioned, defeated the suits of the creditors of the firm by relying on his minority.

The controversy, now, has reference alone to the validity of the assignment by Edwards to Joseph Dilley, of the policy of insurance; and it is in proof and not denied, that he, Joseph Dilley, had paid and was liable to pay, and has since paid, as surety, for Edwards and Dilley, a sum exceeding the sum due

upon it. The precise period at which the assignment was made does not very clearly appear, and has been fully discussed at the bar. It was, however, certainly made in the spring of the year 1845 ; but whether before or after the first bill was filed on the 5th of April, 1845, is not distinctly shown ; and, perhaps, if the case could be made to turn upon the question, whether it preceded or followed that period, the judgment should be against the defendants, who, it must be presumed, could clear up the doubt by producing the assignment.

The validity of this assignment is impeached upon two grounds :

1st. It is said to be fraudulent, under the statute of 13 Elizabeth, as having been made to defeat, hinder and delay creditors ; and

2d. As being in fraud of our insolvent system.

There can be no doubt that the assignment was made for a valuable consideration, but that, alone, as was correctly remarked, is not sufficient. It must also be *bona fide.* But can it be successfully contended, in this case, that Joseph Dilley had purposely thrust himself into the affairs of these parties, for the fraudulent purpose of hindering or defeating their creditors ? The examples put in the books, of purchases which have been deemed fraudulent, as against creditors, though fair prices have been paid for the property, show clearly, I think, that this transaction cannot be successfully assailed upon this ground. 1 *Story's Eq.*, sec. 369. And by the common law, it is well established, that a debtor may secure one creditor, to the exclusion of others, either by payment or a bona fide transfer of his property.

If, therefore, this transaction between Edwards and Dilley can be brought into question, it must be upon the ground, that it is an undue and improper preference under our insolvent system. And conceding, for the present, that these plaintiffs have a standing in court to impeach the transfer upon that ground, I shall very briefly inquire whether they have made out such a case upon the evidence as will, in conformity with the principles established by the courts in the administration of the insolvent system, entitle them to relief.

The transfer to the favored creditor, to be void, must be made with a view, and under an expectation, of taking the benefit of the insolvent laws, and also with an intent thereby to give him an undue and improper preference. Both intents must be found to exist, or the transfer will not be disturbed. *Hickley* vs. *Farmers and Merchants' Bank*, 5 *Gill & Johns.*, 377; *Crawford & Sellman* vs. *Taylor*, 6 *Gill & Johns.*, 323. It is true, the intent may be deduced, as in other cases, from facts and circumstances ; but the facts and circumstances must be such as by fair inference, will bring the mind to the conclusion, that the unlawful intent existed. *Dulaney* vs. *Hoffman*, 7 *Gill & Johns.*, 170. In this case the transfer was made in the spring of the year 1845, and the application for the benefit of the insolvent laws was not made until August, 1847, more than two years afterwards, and Edwards, the petitioner, expressly denies, in his answer, the charge in the bill, that he did, at the time, intend to take the benefit of the acts. The argument for the complainants is, that he only delayed making his application until the pressure of his creditors should render it necessary for him to do so, and that until then he had no motive sufficiently urgent to induce him to the measure.

It strikes me, however, as far more probable, that if he had made up his mind and did intend to take shelter under the insolvent laws from the claims of his creditors, at the time of the assignment, he would have done so soon thereafter, that he might rid himself at once of his responsibilities, and recommence his business. It cannot, I think, be reasonably supposed, that he delayed his application, for two years, merely to throw around the assignment to Dilley the protection which time might give it. But looking to the ground taken in the answer, and the other circumstances attending the transaction, the more reasonable presumption appears to me to be, that with the aid of Dilley, who is his father-in-law, and the property and means still in his hands, he expected to make such an arrangement of his business, as would enable him to go on with it. This case, in its essential features, bears little or no resemblance to the case of Dulaney and Hoffman, in which the

court, upon a concatenation of most pregnant circumstances, did set aside a transfer made by debtors in insolvent circumstances, to secure certain favored creditors. In that case, the application for the benefit of the insolvent law followed rapidly upon the transfer, but seventeen days intervening. And this proximity, with the other facts established by the pleadings and evidence, made almost any presumption irrational, but that the parties making the transfer intended to escape from the suits of their injured and justly offended creditors, by a resort to the insolvent laws.

In this case, the circumstances are wholly dissimilar. Two years and more intervened between the transfer and the petition. The debtor did not strip himself of all his property ; and whilst in the case of Dulaney vs. Hoffman, the answers did not deny the intent charged in the bill; leaving, as the Chief Justice said, an impression that it was not answered because it could not, with truth, be denied—in this case the answer does, in express terms, deny the corresponding allegations of this bill.

But conceding that the complainants have, by the proof of circumstances, overthrown the answers, and shown an intent on the part of Edwards to take the benefit of the insolvent laws ; they have only made out one of the grounds, upon which the assignment must be invalidated. It must appear to have been an undue and improper preference, that is, a voluntary one, and not a transfer or assignment made upon the demand or request of the creditor, for security or preferment. *Crawford & Sellman* vs. *Taylor*, 6 *Gill & Johns.*, 323. I put aside altogether, in considering the voluntary or involuntary character of this assignment, the alleged engagement on the part of Edwards and Dilley to secure Joseph Dilley as their endorser, made, as is contended, when he became such ; because, with regard to these plaintiffs, who are subsequent creditors, I do not think such a secret equity can be enforced. But the proof of Mr. Evans shows, I think very conclusively, that the assignment of the policy was made by Edwards, upon his request and solicitation, he (the witness) acting as the attorney and agent of Dilley ; and whatever may be said with regard to the admissibility of the

12*

declarations of Edwards to him, there can be no doubt that his proof, with reference to the fact of his pressing for the assignment is admissible ; and if so, it brings the case clearly within the decision of the Court of Appeals in *Crawford & Sellman* vs. *Taylor*, and therefore it cannot be considered as an undue and improper preference within the meaning of the insolvent laws.

A good deal of ingenious argument has been employed on both sides, in order to fix the precise period at which the assignment was made ; it being insisted on the one side, that it was subsequent to the 5th of April, 1845, when the first bill was filed, and was therefore made *post litem motam ;* and on the other, that it was prior to that time, and consequently not subject to the considerations which might affect it, if made after that suit was instituted. Without undertaking to solve this knotty point, it may be sufficient to say, that the suit then commenced was dismissed by the plaintiffs themselves ; and besides, there is no reason to believe that the party who made, and the party who took the assignment, knew at the time that there was an intention to litigate the questions, of the right of the assignor to make it. Though these parties lived in Alleghany county, and are so described in the bill, the subpœnas issued to the sheriff of Baltimore county, and of course was not served.

It has been said, and urged with much earnestness and force, that the apparent reluctance of Edwards to make the assignment was affected, and therefore, notwithstanding the forms of solicitation on the one side, and holding back on the other, which have been exhibited, the transaction was a voluntary one, and the transfer made with an intent to give an undue and improper preference over the rest of the creditors.

I cannot, however, view it in this light, being unable to see any motive for it, unless indeed, the parties were arranging a case which would be protected by the decision of the Court of Appeals in one of the cases referred to, such a supposition I think wholly unsupported by the evidence and the circumstances of the case.

My opinion therefore is, that upon the concession that these parties have a standing in court to impeach this assignment, as

an undue and improper preference under the provisions of our insolvent system, they have failed to make out such a case, upon the evidence, as would entitle them to the relief they ask for.

But the plaintiffs have no such standing; the title to property or claims transferred or conveyed to a favored creditor, contrary to the provisions of our insolvent system, being by the 1st section of the act of 1812, ch. 77, expressly vested in the trustee of the insolvent, who alone is competent to sue for its recovery, for the benefit of the creditors generally. *Kennedy* vs. *Boggs*, 5 *H. & I.*, 410. *Harding* vs. *Stevenson*, 6 *H. & I.*, 264. In addition, however, to the prayer, that the transfer of the policy to Dilley may be declared void, the bill asks that he may be removed from his office of trustee and a receiver appointed, to make distribution rateably among the creditors.

My impression, however, is very decided, that this court has no jurisdiction over the subject of the appointment of insolvent trustees, that it is confided exclusively to the courts of law, over whom, in the exercise of this authority, this court can exercise no power of revision or control. *Glenn & Kennedy* vs. *Fowler*, 8 *Gill & Johns.*, 340. It may be that under certain circumstances, this court might exercise an ancillary jurisdiction, and interpose its authority for the prevention of injury, until 'the proper court could inquire into the subject, and apply the appropriate remedy; but it seem impossible to maintain that the Chancery Court, after the courts of law have acted by the appointment of a trustee, may, upon the allegation, that they have appointed an improper person or taken insufficient security, set aside such appointment, and take upon itself the administration of the estate of the insolvent, by an officer of its own. *Alexander* vs. *Stewart*, 8 *Gill & Johns.*, 226. For these reasons, I am of the opinion the bill must be dismissed.

———

S. T. WALLIS and J. GLENN for Complainants.
WM. F. FRICK and THOS. J. McKAIG for Defendants.

[The decree in this case was affirmed on appeal.]